UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL LUGO,

                              Petitioner,

         -vs-                              **No. 6:13-CV-6125(MAT)**
                                          **DECISION AND ORDER**
THOMAS LAVALLEY, Superintendent of
Clinton Correctional Facility, and
ATTORNEY GENERAL OF THE STATE OF
NEW YORK,

                              Respondents,

---

## I.   Introduction

     Represented by counsel, Michael Lugo ("Lugo" or "Petitioner"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is being held in Respondent's custody in violation of his federal constitutional rights. Petitioner's state custody arises from a judgment of conviction entered on June 13, 2008, in New York State County Court, Monroe County, following a jury trial, convicting him of Burglary in the First Degree (New York Penal Law ("P.L.") §§ 20.00, 140.30(4)), and Criminal Possession of a Weapon in the Second Degree (P.L. § 265.03(3)), and sentencing him to two concurrent determinate terms of 11 years imprisonment followed by 5 years of post-release supervision.

## II.  Factual Background and Procedural History

### A.   Overview

     Just after midnight on December 1, 2006, Petitioner and Michael D. Caldwell ("Caldwell") knocked on the front door of the

two-floor apartment occupied by Kenneth Critten ("Critten") and his wife, Angela Spencer ("Spencer"), at 11 Lamberton Park in Rochester, New York. Critten answered the door, and Petitioner and Caldwell forced their way inside. While Petitioner pointed a loaded sawed-off shotgun at Critten's head, he and Caldwell robbed Critten of currency and jewelry. Spencer, having heard the robbery from upstairs, called 911 for assistance. When the police arrived, Petitioner and Caldwell attempted to flee but were arrested as they left the building.

A Monroe County grand jury charged Petitioner and Caldwell with two counts of Robbery in the First Degree (P.L. §§ 20.00, 160.15(4)) and one count of Burglary in the First Degree (P.L. §§ 20.00, 140.30(4)). Petitioner, but not Caldwell, was charged with Criminal Possession of a Weapon in the Second Degree (P.L. § 265.03(3)). Prior to trial, however, the prosecution withdrew the two robbery counts.

## B.    Jury Selection

Jury selection commenced on January 14, 2008, with Monroe County Court Judge Dennis S. Cohen presiding. Petitioner was represented by assigned counsel, Mark Young, Esq. After the venirepersons were sworn in, Juror Number 12, Michelle Dovan ("Juror Dovan"), stated that she had been a schoolteacher for 12 years, and now volunteered "in the City" at 22 schools, working

in "literacy programs" and fundraisers. T.30-31, 58-59.[1] She
initially assured the trial court that if she were selected, she
would be "fair and impartial and render a verdict in accordance
with the evidence and the law" as the court explained it. T.59-60.
Later, however, Juror Dovan realized that she previously had had
Petitioner as a student, and she informed a courtroom deputy of
this fact.

When Juror Dovan was questioned outside the presence of the
other jurors regarding her relationship with Petitioner, she stated
that she was "sure" that he was in her second grade class.
T.109-11. As Petitioner's sole habeas claim relates to trial
counsel's performance in connection with the empanelment of Juror
Donovan, the Court will set forth the relevant portions of the
transcript in some detail below:

> THE COURT: Do you have any good or bad experiences with
> him that you recollect?
>
> [JUROR]: I can't remember anything specifically negative.
> I remember the mother more than the child, not in a
> necessarily positive manner.
>
> THE COURT: Okay. Well, would you hold that against him?
> Would this keep you from being a fair and impartial juror
> on this thing because you have had him in class, that
> he's one of your students, that that would make a
> difference or not? Would that make a difference to you
> that one of your students is on trial?
>
> [JUROR]: I don't know. It's tough. No. I mean honestly,
> the few times I looked at him it didn't even dawn on me.

---

[1]
Numerals preceded by "T." refer to pages from the transcript
of Petitioner's trial.

THE COURT: Now that you know, would that keep you from being fair and impartial?

[JUROR]: I have some negative feelings.

[DEFENSE COUNSEL]: Toward mom?

[JUROR]: Yeah.

[DEFENSE COUNSEL]: But not towards [Petitioner]?

[JUROR]: He wasn't an angel. I mean --

[DEFENSE COUNSEL]: Who was in second grade?

[JUROR]: Exactly. I mean I taught in the City. When you talk about predisposed feelings towards --

[DEFENSE COUNSEL]: We're trying to get -- I mean can you put that all aside and be fair and impartial here to listen to the evidence and decide based on the evidence, not your feelings?

THE COURT: This is really different than anything that may happen in school.

[JUROR]: I know. I don't know how honest you want me to be. I mean she wasn't supportive. She wasn't nice. He would get in some difficult situations. She didn't make it any easier. It was, you know -- am I a fair person? Absolutely.

[DEFENSE COUNSEL]: Can you separate mom and son?

[JUROR]: Yeah. Yeah. Yeah. I can do that. It's funny. We're all a product of our parents though and I feel like the influence that he's gotten, I don't want that to influence me, but I think I can be fair. I know you don't want to hear think. Yes. I will be fair.

THE COURT: Well, you are going to hear some evidence and it's whether you can hear some evidence and restrict it to that. Him being a student or any relationship with his mother, that that wouldn't have a bearing on how you determine the evidence.

[JUROR]: Right. Right. I can do that.

-4-

[DEFENSE COUNSEL]: Kind of went a little different than I thought.

[JUROR]: I'm sorry. Were you looking for the sympathy card? I got no sympathy.

[DEFENSE COUNSEL]: I thought she [the prosecutor] would be wanting to get rid of you because you knew him and liked him.

[JUROR]: No. Not necessarily. Not either way.

THE COURT: You understand none of it can be brought up in jury deliberations.

[JUROR]: Absolutely. Nothing. Nothing prior. Only what we've got here. No. It's fine.

THE COURT: You're confident that you won't bring that up, that you are not going to?

[JUROR]: Right. Sorry.

THE COURT: No. That's fine.

T.111-14.

Juror Dovan then left the judge's chambers, and the parties discussed the matter further. The prosecutor urged Judge Cohen to strike Juror Dovan for cause, arguing that her presence on the jury could be "grounds for appeal." T.114. Trial counsel opposed the challenge, stating, "If I keep her on, that's my choice here." Id. The prosecutor persisted in arguing in favor of a for-cause challenge, noting that "just because she says at the end after being asked ten times that she thinks she can be okay and then [says] yes, I think I can be okay, everything else she said, if someone were to review this, I think would negate her one time saying yes, I could do it." T.115. Trial counsel then explained his

reasons for opposing a for-cause challenge and for not opposing Juror Dovan's empanelment. He acknowledged it was "kind of a funny situation" but thought that of all the jurors, she came across as someone who would listen to the evidence with an open mind. Judge Cohen concurred that it was "difficult" but did not think her past experience and preconceived notions (which mainly related to Petitioner's mother) were sufficient to qualify as the basis for a challenge-for-cause. See T.115-16. The prosecutor then appeared to concede the point, and the trial judge stated, "So, no [challenge for] cause." T.116. Neither defense counsel nor the prosecutor asserted a peremptory challenge against Juror Dovan, although each had many peremptories available. Id.

### 3.   Trial, Verdict, and Post-Verdict Motions

The prosecution presented testimony from Spencer and Critten, along with a recording of the 911 call. Several police officers also testified regarding the sawed-off shotgun in Petitioner's possession and Petitioner's arrest. Jury deliberations began at 10:53 a.m. on January 17, 2008, and at 1:00 p.m. that day, the jury found Petitioner guilty, as charged, of first-degree burglary and second-degree criminal possession of a weapon T.705-07.

Following the verdict but prior to sentencing, Petitioner filed a pro se motion for vacatur in the trial court dated April 9, 2008, claiming that (1) Juror Dovan was biased; and (2) trial counsel was ineffective because he failed to challenge the biased

-6-

juror and failed to investigate and call certain police witnesses. Petitioner then filed a counseled motion and an amended counseled motion to set aside the verdict under New York Criminal Procedure Law ("C.P.L.") § 330.30, arguing that the trial court should have excluded the 911 recordings, and that the trial evidence was legally insufficient.

On April 28, 2008, at the prosecution's request and in light of Petitioner's ineffective assistance claim, the trial judge agreed to relieve trial counsel and assign new counsel. The prosecution submitted an answering affirmation to Petitioner's pro se motion, asserting that the motion was premature and, in any event, without merit because trial counsel's decision regarding Juror Dovan was a matter of strategy.

### 4.   Sentencing

On June 13, 2008, Petitioner appeared for sentencing with substitute counsel, Peter J. Pullano, Esq. At the parties' suggestion, the trial court decided to treat Petitioner's pro se motion, to the extent it related to record-based matters, as another C.P.L. § 330.30 motion to set aside the verdict. To the extent that Petitioner's pro se motion related to matters dehors the record, it would be treated as a C.P.L. § 440.10 motion to vacate the judgment, and it would be decided after sentencing.

Judge Cohen ruled from the bench and denied Petitioner's C.P.L. § 330.30 claims. S.3-4, 8-9. With regard to the juror-bias

claim, Judge Cohen noted, "[W]e did have a pretty comprehensive voir dire of" Juror Dovan in chambers, and trial counsel "strategically . . . chose to keep the juror." S.4. According to Judge Cohen, trial counsel "made . . . what appeared to be, [a] reasoned decision to have that juror." S.4. Furthermore, at the time of voir dire, Judge Cohen found there was "no indication that [Petitioner] felt that [Juror Dovan] wasn't an acceptable juror," but that, to the contrary, Petitioner and counsel "seemed to confer and accept the juror." S.4.

Judge Cohen proceeded to sentence Petitioner, as a violent felony offender, to two concurrent determinate terms of 11 years followed by 5 years of post-release supervision. S.22-23. According to Judge Cohen, the evidence against Petitioner was "overwhelming." S.21. Following sentencing, Judge Cohen issued an oral ruling denying Petitioner's C.P.L. § 440.10 claim that trial counsel had erred by not investigating witnesses. S.24-27. Judge Cohen stated that trial counsel "did a marvelous job of defending this case", that he "zealously" and "vigorously defended" the case, and that he "gave Mr. Lugo the finest representation." S.26-27.

### 5.   The 2009 C.P.L. § 440.10 Motion to Vacate the Judgment of Conviction

After Petitioner had filed a direct appeal from his conviction, but before the appeal had been perfected, he filed with the trial court a pro se motion dated November 17, 2009, pursuant to C.P.L. § 440.10, arguing that (1) Juror Dovan was biased and

-8-

impermissibly allowed to remain on the jury; (2) Juror Dovan "flared both of her hands in a suggestive motion to the prospective jurors in the panel"; (3) Juror Dovan tainted the entire jury process due to her bias against Petitioner; (4) trial counsel was ineffective in failing to challenging Juror Dovan; and (5) substitute counsel was ineffective for not supplementing Petitioner's pro se post-verdict motion. The prosecution opposed the motion, citing both procedural grounds and lack of merit to the claims. Petitioner filed a reply affidavit.

On February 23, 2010, Judge Cohen denied the motion "for all of the reasons stated in the People's answering affirmation." See Respondent's Exhibit ("Resp't Ex.") J at 2. Judge Cohen "[s]pecifically" denied the motion pursuant to C.P.L. § 440.10(2)(b) because the judgment against Lugo was pending on appeal at the time of the motion, and sufficient facts appeared in the record for review of petitioner's claim on appeal. Id. Although the prosecution timely served Petitioner with notice of entry of Judge Cohen's order, he failed to seek leave to appeal the Appellate Division, Fourth Department, of New York State Supreme Court ("the Appellate Division").

### 6.   The Direct Appeal

Represented by new counsel, Petitioner appealed his conviction to the Appellate Division on the grounds that, inter alia, trial counsel was ineffective because he (1) failed to join in the

prosecutor's challenge-for-cause to Juror Dovan; and (2) consented to the trial court's decision to hold a charge conference after summations. On September 30, 2011, the Appellate Division unanimously affirmed the conviction, denying all of Petitioner's claims. People v. Lugo, 87 A.D.3d 1403 (4th Dep't 2011). Petitioner's counsel filed an application for leave to appeal to the New York Court of Appeals, raising, inter alia, the claim that trial counsel was ineffective in allowing Juror Dovan to be empaneled. On December 28, 2011, the New York Court of Appeals denied leave to appeal. People v. Lugo, 18 N.Y.3d 860 (2011).

### 7.  The Federal Habeas Petition

Petitioner filed his counseled federal habeas petition with this Court on March 7, 2013, asserting a single claim – that trial counsel was ineffective for failing to join in the prosecutor's challenge for cause to Juror Dovan, who was allegedly biased. Respondent answered the petition, conceding that it is timely and that Petitioner's ineffective assistance claim is properly exhausted. Respondent argues that the Appellate Division's denial of the Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, and therefore habeas relief is not warranted. Petitioner's habeas counsel filed a reply brief.

For the reasons that follow, Lugo's request for a writ of habeas corpus is denied, and the petition is dismissed.

**IV.   Legal Principles Applicable to Section 2254 Petitions**

A federal court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2254(a). Section 2254, as amended in 1996 by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides new limitations on when habeas relief may be granted. If a claim was "adjudicated on the merits in State court proceedings[,]" the writ may not issue "unless the adjudication of the claim . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2554(d). "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Green v. Travis, 414 F.3d 288, 296 (2d Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)).

Under 28 U.S.C. § 2254(d)(1), a state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state

court's decision. Harrington v. Richter, ___ U.S. ____, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The same standard holds, even where a state court's decision is unaccompanied by an explanation; in such cases, the petitioner must show that "there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784.

V.   **The Merits of the Petition**

A.   **The Appellate Division Adjudicated Petitioner's Ineffective Assistance Claim on the Merits.**

Petitioner asserts that same ineffective assistance claim as he asserted on direct appeal. The Appellate Division summarily "reject[ed] [Petitioner's] contention that he was denied effective assistance of counsel." Lugo, 87 A.D.3d at 1405 (citing People v. Baldi, 54 N.Y.2d 137, 147 (1981)). Because "[a] summary disposition constitutes a disposition 'on the merits'[,]" the Appellate Division's decision is entitled to AEDPA deference. Hawthorne v. Schneiderman, 695 F.3d 192, 196 (2d Cir. 2012) ("AEDPA unquestionably requires deference to a state court's 'summary disposition' of an appeal.") (citing Harrington v. Richter, 131 S. Ct. at 784).

B.   **Relevant Law**

The Sixth Amendment's right to counsel "is the right to the *effective* assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771, n. 14 (1970) (emphasis supplied); accord Strickland v. Washington, 466 U.S. 668, 686 (1984). An ineffective assistance

-12-

claim "has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland, 446 U.S. at 687).

For purposes of this Court's AEDPA analysis, Strickland represents "the relevant 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Aparicio v. Artuz, 269 F.3d 78, 95 & n. 8 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(d)(1)). A habeas petitioner is "not required to further demonstrate that his particular theory of ineffective assistance of counsel is also 'clearly established[,]'" Aparicio, 269 F.3d 95 & n. 8, but he "must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance. . . ." Bell v. Cone, 535 U.S. 685, 698-99 (2002). Rather, he must show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner. Id. (citation omitted). The Supreme Court has characterized habeas review of an ineffective assistance under AEDPA as "doubly" deferential. Harrington, 131 S. Ct. at 788; Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)(stating that the relevant question "is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold") (citations omitted). As the Supreme Court explained in Harrington, "[t]he

<u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial." <u>Harrington</u>, 131 S. Ct. at 788 (citing <u>Knowles</u>, 556 U.S. at 123).

### 1.   <u>**Strickland**</u>**'s Performance Prong**

The sole basis for Petitioner's attack on trial counsel's performance is that counsel did not move to strike, for cause, Juror Dovan as an impliedly biased venireperson. Respondent argues that Petitioner cannot establish that trial counsel's performance in connection with Juror Dovan was deficient, for two reasons: (1) Juror Dovan was not biased, meaning that counsel had no basis to assert a for-cause challenge; and (2) trial counsel's decision not to challenge Juror Dovan was based on a reasonable trial strategy, which should not be second-guessed on habeas review. As discussed further below, the Court finds that trial counsel made a reasonable strategic decision to retain Juror Dovan on the panel hearing Lugo's case.

Scrutiny of counsel's performance must be "highly deferential," and the habeas petitioner must overcome "the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689; <u>see also Knowles</u>, 556 U.S. at 123. Stated another way, the petitioner must show that the challenged action cannot reasonably be considered sound trial strategy under the circumstances of the case. <u>Strickland</u>, 466 U.S. at 689.

An attorney's determination to "accept or strike" a prospective juror is a strategic or tactical decision. Alvord v. Wainwright, 469 U.S. 956, 959 n. 4 (1984) (citation omitted); see also Hughes v. United States, 258 F.3d 453, (6th Cir. 2001) ("Counsel is also accorded particular deference when conducting voir dire. An attorney's actions during voir dire are considered to be matters of trial strategy.") (citing Nguyen v. Reynolds, 131 F.3d 1340, 1349 (10th Cir. 1997); other citation omitted)). Actions or omissions by counsel that "might be considered sound trial strategy" do not constitute ineffective assistance. Michel v. Louisiana, 350 U.S. 91, 101 (1955); accord Strickland, 466 U.S. at 689; see also, e.g., Kieser v. People of State of N.Y., 56 F.3d 16, 18 (2d Cir. 1995).

The record clearly indicates that, based on his questioning of Juror Dovan and his response to the trial court during the various colloquys, trial counsel carefully considered the issue of whether Juror Dovan should or should not be seated. The record is devoid of any suggestion that trial counsel's decision not to challenge Juror Dovan for cause was based on ignorance or inattention. Rather, trial counsel explained, at some length, the basis for his decision keep Juror Dovan:

> I don't think it's a [challenge for] cause. Certainly it's kind of a funny situation. I thought after what she said, I would be looking to get rid of her, you know, because she hated my client's mom and, you know, she said [the] apple [doesn't fall far from the] [ ] tree, but I think she, of the people we've talked to, she certainly

> has come across as being [a person who believes,] ["]I
> can listen to the evidence.["]

T.115. Indeed, Judge Cohen later opined that trial counsel "strategically . . . chose to keep" Juror Dovan. S.4. It bears noting that Judge Cohen did not think that Juror Dovan warranted a challenge for cause. <u>See</u> T.116 ("She has some preconceived thoughts. First of all, they are a long time ago and they are mainly not related to the defendant on this, but is that enough for her not to be fair and impartial? *I don't think I quite get there on this and that doesn't qualify as a grounds [for challenge].*") (emphasis supplied).

In the context of reviewing a judge's determination regarding juror bias, the Supreme Court has explained that "the question whether a venireman is biased . . . is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." <u>Wainwright v. Witt</u>, 469 U.S. 412, 428 & n. 9 (1985) (citing <u>Reynolds v. United States</u>, 98 U.S. 145, 156-57 (1879) ("[T]he manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words. That is seen below, but cannot always be spread upon the record.")). Surely this principle applies as well to a defense attorney, who, like a trial judge, has the opportunity to see and hear the jurors first-hand.

As the Supreme Court has held, "[a]lthough courts may not indulge 'post hoc rationalization' for counsel's decisionmaking

*that contradicts the available evidence* of counsel's actions, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions." <u>Richter</u>, 131 S.Ct. at 790 (citations and internal quotation marks omitted; emphasis supplied). Here, as Respondent argues, the facts of record provide reasonable grounds for trial counsel's affirmative decision to retain Juror Dovan on the jury. As noted above, trial counsel had the opportunity to observe Juror Dovan's demeanor, and he opined that she seemed more open than the other venirepersons to "listen[ing] to the evidence." T.115. Trial counsel also may have reasonably concluded that Juror Dovan's teaching background and volunteer activities in the City school district might make her more sympathetic to the defense. T.58-59. There are many cases involving discriminatory peremptory strikes in which prosecutors cite, as a race-neutral reason for striking a juror, the juror's employment in a so-called "helping profession" (e.g., teaching and social work) because such individuals tend to favor the defense position. <u>See</u>, <u>e.g.</u>, <u>Rosado v. Unger</u>, No. 11 Civ. 3747, 2012 WL 5871607, at *4 (S.D.N.Y. May 4, 2012) (prosecutor explained that it "generally did not seat people who were social workers; were preschool or elementary school teachers . . . ."), <u>report and recommendation adopted</u>, 2012 WL 5871606, at *3 (S.D.N.Y. Nov. 20, 2012); <u>Robinson v. Smith</u>, No. 09 Civ. 8222, 2011 WL 1849093, at *21 n.34 (S.D.N.Y. May 17, 2011) (prosecutor may have challenged jurors

who were teachers or social workers because "such workers tend to sympathize with defendants") (collecting cases), report and recommendation adopted, 2011 WL 3163466 (S.D.N.Y. July 26, 2011); McLeod v. Moscicki, No. 02 Civ. 9335, 2003 WL 22427757, at *2 (S.D.N.Y. Oct. 22, 2003) (prosecutor "always challenged people employed as either teachers or social workers, since it was his view that individuals with such occupations tended to hold views that were favorable to the defense").

Furthermore, trial counsel actively participated in voir dire, challenging for cause eight venirepersons and exercising peremptory challenges as to the three for-cause challenges that the trial court had denied. See T.105-09, 180-84, 231-34, 248-49. Notably, trial counsel declined to exercise a peremptory challenge against Juror Dovan, even though he had peremptories available to use. Trial counsel's "active participation in voir dire coupled with his challenges to a number prospective jurors reveals that the decision not to exclude [Juror Dovan] was the product of sound trial strategy rather than ineffective assistance." Baxter v. Conway, No. 07 Civ. 2759(VB)(GAY), 2011 WL 5881846, at *20 (S.D.N.Y. July 29, 2011) (citing Figueroa v. Heath, No. 10-CV-0121, 2011 WL 1838781, at *11 (E.D.N.Y. May 13, 2011) (finding significant that counsel challenged venirepersons who expressed "any reservations or hesitations regarding [their] ability to hold the prosecution to its burden"); Charlemagne v. Goord, No. O5 Civ. 9890, 2008 WL

2971768, at *27 (S.D.N.Y. June 30, 2008); <u>Nova v. Ercole</u>, No. 06 Civ. 562, 2007 WL 1280635, at *8 (S.D.N.Y. Apr. 30, 2007)), <u>report and recommendation adopted</u>, No. 07 CV 2759 VB, 2011 WL 5881190 (S.D.N.Y. Nov. 23, 2011).

### 2.   <u>Strickland</u>'s Prejudice Prong

Given that the Court has found that a consciously-made, reasonable strategic decision supported defense counsel's retention of Juror Dovan, the Court need not proceed to examine the prejudice component of the <u>Strickland</u> test. <u>See Strickland</u>, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). Nevertheless, for the sake of completeness, the Court addresses Petitioner's argument that by permitting Juror Dovan, who suffered from an implied bias against Petitioner, to sit on the jury, trial counsel prejudiced the defense.

"The constitutional standard of fairness requires that a defendant have 'a panel of impartial, 'indifferent' jurors.'" <u>Murphy v. Florida</u>, 421 U.S. 794, 799 (1975) (quoting <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961)). The Supreme Court has stated that "[t]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard." <u>Irvin</u>, 366 U.S. at 723;

accord <u>Murphy</u>, 421 U.S. at 800; <u>Skilling v. United States</u>, 130 S.
Ct. 2896, 2925 (2010). The defendant thus has the burden of showing
that the prospective juror was actually biased against him. <u>Murphy</u>,
421 U.S. at 800 (citing <u>Irvin</u>, 366 U.S. at 723).

Petitioner points to several of Juror Dovan's answers during
voir dire and argues that they are more than sufficient to show an
implied bias. In particular, Petitioner cites Juror Dovan's
comments that Lugo got "in some difficult situations" and "wasn't
an angel." T.111-14. Respondent, however, notes that when defense
counsel followed up by asking, "[w]ho was [an angel] in second
grade," Juror Dovan agreed, stating, "[e]xactly." T.112.

Petitioner also cites the negative feelings Juror Dovan had
towards his mother, i.e., that "she wasn't supportive" and "wasn't
nice." Juror Dovan answered, "[w]e're all a product of our parents"
when asked if she would hold those negative feelings against
Petitioner. Respondent counters by noting that when defense counsel
followed up on this line of questioning, Juror Dovan ultimately
stated, "I will be fair." T.112. Petitioner rejoins that before
Juror Dovan said, "I will be fair," her answers amounted to
"waffling at best" (i.e., "I think I can be fair. I know you don't
want to hear think. . . ."), and were "hardly unequivocal." After
reviewing the transcript, the Court agrees that Petitioner has not
unreasonably interpreted some of Juror Dovan's answers as
vacillating; yet, Respondent is correct that Juror Dovan ultimately

confirmed, in response to the trial judge's questioning, that she would restrict her verdict to the evidence presented at trial, and that "[a]bsolutely" none of her prior experiences with Petitioner and his mother could be brought up in jury deliberations. Respondent reasonably argues that since Juror Dovan herself came forward and forthrightly related her prior experiences with Petitioner and his mother, the trial judge was entitled to credit her later sworn assurances that she would be impartial. See Smith v. Phillips, 455 U.S. 209, 217 n.7 (1982) ("[S]urely one who is trying as an honest man to live up to the sanctity of his oath is well qualified to say whether he has an unbiased mind in a certain matter.").

The Supreme Court has consistently instructed that the trial judge is in the best position to assess a juror's impartiality, especially where, as here, the juror has been asked searching follow-up questions and the court has witnessed the juror's responses. See Skilling, 130 S. Ct. at 2922-23 ("This face-to-face opportunity to gauge demeanor and credibility, coupled with information from the questionnaires regarding jurors' backgrounds, opinions, and sources of news, gave the court a sturdy foundation to assess fitness for jury service."). Because the trial judge's "determination [regarding juror bias] is essentially one of credibility, and therefore largely one of demeanor, . . the trial court's resolution of such questions is entitled, even on direct

appeal, to 'special deference,'" as a finding of fact. Patton v. Yount, 467 U.S. 1025, 1036-38 (1984) (citation omitted). If such a finding is entitled to deference on direct review, it necessarily is entitled to even greater deference on habeas review under AEDPA.

Relatedly, the Court finds that Petitioner has not succeeded in demonstrating prejudice as a result of trial counsel's handling of the juror issue, because there is no reasonable probability that the outcome would have been different had trial counsel joined the prosecutor's for-cause challenge of Juror Dovan. As noted above, the trial court stated that any preconceptions Juror Dovan had about Petitioner did not rise to the level of warranting a for-cause challenge. Thus, there is nothing in the record to lead this Court to suspect that Judge Cohen would have changed his mind had Petitioner's counsel joined the prosecutor's for-cause challenge. Cf. Wallace v. Artus, No. 9:06-CV-464(FJS/VEB), 2011 WL 1302228, at *9 (N.D.N.Y. Mar. 31, 2011) ("[G]iven the extensive voir dire questioning, even if Petitioner's trial counsel had challenged [the venireperson] for cause, there is no indication that the state court would have granted his application. [The venireperson] never outright stated that he would be biased against Petitioner because the incident occurred in a bar; and, in fact, he stated that he 'could try' to be impartial when individually asked and also stated that he would judge the case solely on the facts when the court posed the question to a number of potential jurors all at once.").

-22-

Because Petitioner cannot fulfill either the "performance" or the "prejudice" elements of <u>Strickland</u> under a <u>de novo</u> standard of review, he necessarily cannot demonstrate that the state court's rejection of his ineffective assistance claim was an "unreasonable application of" or "contrary to" <u>Strickland</u> for purposes of AEDPA. Accordingly, habeas relief may not issue on his habeas claim.

**V.   Conclusion**

For the foregoing reasons, the petition (Dkt #1) for a writ of habeas corpus is dismissed.  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, <u>see</u> 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue. The Clerk of the Court is requested to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     December 26, 2013
           Rochester, New York